Jason C. Murray (State Bar No. 169806)
    JMurray@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

Shira Rebecca Liu (State Bar No. 274158)
    SLiu@crowell.com
David Charles Griffith (State Bar No. 329342)
    DGriffith@crowell.com
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: 949.263.8400
Facsimile: 949.263.8414

Attorneys for Defendant Prime Therapeutics
LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDS Healthcare Foundation,<br><br>                Plaintiff,<br><br>        v.<br><br>Prime Therapeutics LLC,<br><br>                Defendant. | Case No. 2:21-cv-04979-DSF-AGR<br><br>**DEFENDANT PRIME THERAPEUTICS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:        October 18, 2021<br>Time:        1:30 p.m.<br>Ctrm.:       7D (1st Street)<br>Judge:       Honorable Dale S. Fischer<br>Date Action Filed:     June 18, 2021 |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS
CASE NO. 2:21-CV-04979-DSF-AGR

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 18, 2021 at 1:30 p.m. or as soon thereafter as counsel may be heard before the Honorable Dale S. Fischer, in Courtroom 7D of the United States District Court, First Street Courthouse, 350 West 1st Street, Los Angeles, California, Defendant Prime Therapeutics LLC ("Prime") will, and hereby does, move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims brought against it in Plaintiff AIDS Healthcare Foundation's ("AHF") Complaint ("Complaint" or "Compl."), Dkt. No. 1, filed June 18, 2021, for failure to state a claim.

Defendant Prime seeks an order pursuant to Rule 12(b)(6) dismissing with prejudice the Complaint, or in the alternative, to compel arbitration of Plaintiff's claims. Prime's motion to dismiss is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, all pleadings on file in this action, and any argument that counsel may present to this Court.


Dated:  August 13, 2021                         CROWELL & MORING LLP


By: */s/ Jason C. Murray*
    Jason C. Murray
    Shira Rebecca Liu
    David Charles Griffith

    Attorneys for Defendant
    Prime Therapeutics LLC

# TABLE OF CONTENTS

**Page**

I.    Introduction ...................................................................................................1

II.   Factual Background ........................................................................................2

III.  Argument.........................................................................................................4

    A.   AHF Cannot Bring Its Antitrust Claims Because It Has Not and
           Cannot Plead Antitrust Injury ............................................................4

          1.   AHF Does Not Allege Any Unlawful Conduct.........................5

          2.   AHF Does Not Allege Injury Which Flows From
              Allegedly Anticompetitive Conduct ...........................................7

          3.   AHF Does Not Allege That the Prime-ESI Collaboration
              Injured AHF In A Manner Which the Antitrust Laws
              Were Designed to Prevent...........................................................8

    B.   AHF's Antitrust Claims Fail to Allege a Per Se Violation..................9

    C.   AHF's Antitrust Claims Fail to Allege Sufficient Facts to State a
           Rule of Reason Violation .................................................................14

    D.   UCL Claim Must Be Dismissed........................................................16

    E.   AHF's Claim Violates The Parties' Contract for A One-Year
           Limitation on Actions........................................................................17

    F.   AHF Should Be Compelled To Arbitrate If Its Claims Are Not
           Dismissed ..........................................................................................18

IV.  Conclusion....................................................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California,*
   190 F.3d 1051 (9th Cir. 1999) (Sherman Act)......................................................5

6

7
*In re Animation Workers Antitrust Litig.,*
   87 F. Supp. 3d 1195 (N.D. Cal. 2015)..........................................................18, 19

8

9
*Atl. Richfield Co. v. USA Petroleum Co.,*
   495 U.S. 328 (1990) .................................................................................1, 4, 7

10

11
*Bank of America, N.A. v. Micheletti Family Partnership,*
   No. 08–02902(JSW), 2008 WL 4571245 (N.D. Cal. Oct. 14, 2008).................19

12

13
*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.,*
   166 F. Supp. 3d 988 (N.D. Cal. 2015)...............................................................14

14

15
*Bischoff v. DirecTV, Inc.,*
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................................19

16
*Brantley v. NBC Universal, Inc.,*
   675 F.3d 1192 (9th Cir. 2012) ..........................................................................15

17

18
*Broad. Music, Inc.* [*BMI*] *v. Columbia Broad. Sys., Inc.,*
   441 U.S. 1 (1979) ...........................................................................*passim*

19

20
*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
   429 U.S. 477 (1977) ...........................................................................4, 5, 8

21

22
*California Pharmacy Mgmt., LLC v. Zenith Ins. Co.,*
   No. SA-CV-09242-DOC-ANX, 2010 WL 11519328 (C.D. Cal.
   Dec. 1, 2010) ....................................................................................................5

23

24
*Cascade Health Sols. v. PeaceHealth,*
   515 F.3d 883 (9th Cir. 2008) ..............................................................................1

25

26
*Castro v. Sanofi Pasteur Inc.,*
   No. CV 11-7178 (JLL), 2012 WL 12516573 (D.N.J. Dec. 20, 2012) ...............13

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS
CASE NO. 2:21-CV-04979-DSF-AGR

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473 (9th Cir. 1986), *opinion modified on denial of reh'g*,
   810 F.2d 1517 (9th Cir. 1987) .........................................................................10

*Evac v. Pataki*,
   89 F. Supp. 2d 250 (N.D.N.Y. 2000).................................................................9

*FashionPass, Inc. v. Rent the Runway, Inc.*,
   No. CV 19-3537-GW(JCX), 2019 WL 3782332 (C.D. Cal. June 24,
   2019)...................................................................................................................9

*Fedway Assocs., Inc. v. United States Treasury, Bureau of Alcohol,
   Tobacco & Firearms*,
   976 F.2d 1416 (D.C. Cir. 1992)........................................................................13

*Galvez v. Anheuser-Busch, Ltd. Liab. Co.*,
   No. 2-17-00621 WBS DB, 2017 U.S. Dist. LEXIS 152382 (E.D.
   Cal. Sep. 19, 2017) ...........................................................................................18

*Garrison v. Oracle Corp.*,
   159 F. Supp. 3d 1044 (N.D. Cal. 2016).............................................................17

*Gerlinger v. Amazon.com, Inc.*,
   311 F. Supp. 2d 838 (N.D. Cal. 2004)................................................................6

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
   250 F. Supp. 3d 438 (N.D. Cal. 2017)................................................................4

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) .......................................................................................19

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
   733 F. App'x 380 (9th Cir. 2018).......................................................................5

*Jain Irrigation, Inc. v. Netafim Irrigation, Inc.*,
   386 F. Supp. 3d 1308 (E.D. Cal. 2019) ............................................................14

*Kelsey K. v. NFL Enters., LLC*,
   757 F. App'x 524 (9th Cir. 2018)......................................................................16

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008)............................................................................5

*Langston Corp. v. Standard Reg. Co.*,
   553 F. Supp. 632 (N.D. Ga. 1982)....................................................................13

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) ........................................................................11

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989) ........................................................15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ........................................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................19

*name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
   795 F.3d 1124 (9th Cir. 2015) ......................................................15

*NCAA v. Alston*,
   141 S. Ct. 2141 (2021) ...................................................10, 11, 14

*Newman v. Universal Pictures*,
   813 F.2d 1519 (9th Cir. 1987) ........................................................8

*Nokia Corp. v. AU Optronics Corp.*,
   No. C 09-05609 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ....................19

*NSS Labs, Inc. v. Symantec Corp.*,
   No. 18-CV-05711-BLF, 2019 WL 3804679 (N.D. Cal. Aug. 13, 2019)....................................................................................11

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
   472 U.S. 284 (1985) ........................................................................13

*Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018) .............................................................11, 15

*Orchard Supply Hardware ("OSH") LLC v. Home Depot USA, Inc.*,
   939 F. Supp. 2d 1002 (N.D. Cal. 2013)........................................16

*Orion Pictures Distr. Corp. v. Syufy Enters.*,
   829 F.2d 946 (9th Cir. 1987) ..........................................................8

*Paladin Assocs. v. Mont. Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ................................................11, 12

*Pool Water Prods. v. Olin Corp.*,
   258 F.3d 1024 (9th Cir. 2001) ........................................................9

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iv-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

*Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union,*
   642 F. App'x 665 (9th Cir. 2016) ................................................................5

*Rebel Oil Co. v. Atl. Richfield Co.,*
   51 F.3d 1421 (9th Cir. 1995) ....................................................................7

*Ryan v. Microsoft Corp.,*
   147 F. Supp. 3d 868 (N.D. Cal. 2015) ...................................................17

*Simula, Inc. v. Autoliv, Inc.,*
   175 F.3d 716 (9th Cir. 1999) ..................................................................18

*Somers v. Apple, Inc.,*
   729 F.3d 953 (9th Cir. 2013) ....................................................................5

*Song Fi, Inc. v. Google, Inc.,*
   No. C 14-5080 CW, 2016 WL 1298999 (N.D. Cal. Apr. 4, 2016) ......9

*Tanaka v. Univ. of S. Cal.,*
   252 F.3d 1059 (9th Cir. 2001) ................................................................15

*Texaco Inc. v. Dagher,*
   547 U.S. 1 (2006) ...................................................................................11

*United States v. Brown Univ. in Providence in State of R.I.,*
   5 F.3d 658 (3d Cir. 1993) ......................................................................10

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) ..................................................................12

*United States v. Socony–Vacuum Oil Co.,*
   310 U.S. 150 (1940) ...............................................................................11

*United States v. Trenton Potteries,*
   273 U.S. 392 (1927) ...............................................................................11

*W. Parcel Express v. UPS of Am.,*
   190 F.3d 974 (9th Cir. 1999) ..................................................................13

*Z Channel Ltd. P'ship v. HBO, Inc.,*
   931 F.2d 1338 (9th Cir. 1991) ..................................................................8

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
   401 U.S. 321 (1971) ...............................................................................17

CROWELL
& MORING LLP
ATTORNEYS AT LAW

**California Cases**

*Aguilar v. Atl. Richfield Co.*,
 92 Cal. Rptr. 2d 351 (Cal. Ct. App.), *aff'd*, 25 Cal. 4th 826, 24 P.3d
 493 (Cal. 2001), *as modified* (July 11, 2001) ....................................................10

*Chavez v. Whirlpool Corp.*,
 93 Cal. App. 4th 363 (2001) .......................................................................16

*Crown Oil Corp. v. Superior Ct.*,
 177 Cal. App. 3d 604 (Cal. Ct. App. 1986) .............................................................7

*Farmers Ins. Exchange v. Superior Court*,
 2 Cal. 4th 377 (1992) ...............................................................................16

*Marin Cty. Bd. of Realtors, Inc. v. Palsson*,
 16 Cal. 3d 920 (Cal. 1976) .......................................................................10

*Marsh v. Anesthesia Servs. Med. Grp., Inc.*,
 200 Cal. App. 4th 480 (Cal. Ct. App. 2011) ......................................................5, 9

*Morrison v. Viacom, Inc.*,
 66 Cal. App. 4th 534 (1998) .................................................................4, 5, 7

*Reynolds v. California Dental Serv.*,
 200 Cal. App. 3d 590 (Cal. Ct. App. 1988) ...............................................10, 14

**Other State Cases**

*Peggy Rose Revocable Trust v. Eppich*,
 640 N.W. 2d 601 (Minn. 2002) ..................................................................17

**California Statutes**

Cal. Bus. & Prof. Code
 § 16770(f)-(g) .......................................................................................14
 § 17200...............................................................................................16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..............................................................................20

PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW: AN
 ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR APPLICATION (5th
 ed., 2021 Cum. Supp. 2013-2020)..............................................................5

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-vi-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

US DOJ & FTC, IMPROVING HEALTH CARE: A DOSE OF COMPETITION,
    *Chapter 7: Industry Snapshot and Competition Law:*
    *Pharmaceuticals* 11 (2004) .................................................................................2

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

AIDS Healthcare Foundation ("AHF") brings this suit solely because, it alleges, it is now reimbursed less than it was before for dispensing drugs to Prime patients.  Compl. ¶¶ 22, 36.[1]  AHF's dissatisfaction with these reimbursements does not create an antitrust claim, and AHF's antitrust claims under the Sherman and Cartwright Acts fail for multiple reasons that are fundamental to antitrust law. First, AHF does not allege any anticompetitive conduct, let alone conduct that is within the narrow scope of agreements as to which per se treatment is appropriate. Second, AHF alleges not an anticompetitive harm but a competitive success – AHF *admits* that Prime describes its collaboration with Express Scripts, Inc. ("ESI") as "designed to deliver more affordable care."  Compl. ¶ 9 (quoting Compl. Ex. 4 at 25).[2]  And "[l]ow prices benefit consumers regardless of how those prices are set." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990).  AHF also fails to allege any harm to competition.  AHF may not like the ESI-Prime collaboration, but "the antitrust laws' prohibitions focus on protecting the competitive process and not on the success or failure of individual competitors."  *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 902 (9th Cir. 2008).  AHF's preference to receive higher reimbursements does not entitle it to bring antitrust claims that seek to punish core procompetitive behavior.  These claims, along with AHF's derivative UCL claim, must be dismissed.  They must also be dismissed for the independent reason that they are all barred because they were brought too late under the contract signed by AHF.  Finally, any claims not dismissed by this Court should be compelled to arbitration pursuant to the parties' contractual agreement.

---

[1] For the purpose of this motion to dismiss, Prime takes the allegations in AHF's Complaint as true, without waiving its right to factually dispute any allegation.
[2] Page numbers for Complaint Exhibits refer to the page number stamped by the ECF system.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-1-                                              DEFENDANT PRIME THERAPEUTICS LLC'S
                                                            MOTION TO DISMISS;
                                                  CASE NO. 2:21-CV-04979-DSF-AGR

## II.    Factual Background

Defendant Prime is a pharmacy benefit manager, or PBM.  PBMs are an "important part of the process by which many American get their prescription drugs."  Compl. at 3 n.1 (quoting *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct 464, 478 (2020)).  "PBMs serve as intermediaries between prescription-drug plans and the pharmacies that beneficiaries use."  *Id.* (quoting *Rutledge*, 141 S. Ct at 478).  PBMs like Prime offer a variety of services in their role as intermediaries.  These services include pharmacy network development and maintenance, which requires negotiation with large chain pharmacies and thousands of independent pharmacies.

Research shows that PBMs generally lower prescription drug costs for customers.[3]  This is especially true for Prime, which utilizes a pass-through PBM model.  Prime is owned by twelve entities representing nineteen not-for-profit Blue Cross and Blue Shield Plans, subsidiaries or affiliates of those plans (collectively referred to as "Blue Plans").  Compl. Ex. 8 at 48.  This makes Prime the only major PBM with a primary mission focused on driving savings.  Prime's clients include, in addition to Prime's owners, non-owner Blues Plans as well as other groups such as employers and unions.  Prime focuses on delivering the lowest net cost on prescription medicines.  Its savings are passed onto its clients in an effort to lower the total cost of healthcare.

Plaintiff AHF is a pharmacy.  AHF separately negotiated with Prime and with Express Scripts, Inc (ESI), another PBM, to dispense drugs to patients whose pharmacy benefits are administered by Prime with respect to Prime's plan clients and by ESI with respect to ESI's clients.  Compl. ¶ 18.  A Pharmacy Participation

___

[3] *See* US DOJ & FTC, IMPROVING HEALTH CARE: A DOSE OF COMPETITION, *Chapter 7: Industry Snapshot and Competition Law: Pharmaceuticals* 11 (2004), https://www.justice.gov/sites/default/files/atr/legacy/2006/04/27/204694.pdf ("[T]he empirical evidence suggests that consumers with prescription drug insurance administered by a PBM save substantially on their drug costs as compared to cash-paying customers.").

Agreement ("PPA"), signed by Prime and AHF, "sets forth the terms and conditions under which [AHF] will provide benefits in Prime's pharmacy networks," including payment provisions.  *See* RJN, Ex. 1 at 1, § 3.

In December 2019, Prime announced a three-year collaboration with ESI. Compl. ¶¶ 9, 11.  Each of Prime's clients could elect whether to transition to ESI's commercial and Medicaid pharmacy networks, based on ESI's pharmacy contracts and made available to those plans as a result of the ESI-Prime collaboration, or continue to use Prime's negotiated rates.  Compl. Ex. 7 at 34 ("ESI's Medicare network options are now available to Prime's [clients], and *they have the choice* to determine which pharmacy network(s) they will use to administer benefit plans.") (emphasis added).  Clients that did elect to transition to ESI's network then had access to ESI's reimbursement rates.  Each of the clients opted to transition to ESI's networks.  Compl. ¶ 14 ("Prime's health plans will begin to transition to ESI's . . . networks") (quoting Compl. Ex. 5 at 29).

Because each client opted to transition to ESI's networks, ESI "handl[es] negotiations for drugs on the pharmacy benefit," Compl. Ex. 4 at 25, for the ESI pharmacy contracts that make up the ESI networks.  ESI also handles negotiations with drug manufacturers covered under members' prescription drug benefit. Compl. Ex. 8 at 40.  Pursuant to the ESI-Prime collaboration, Prime's clients are then able to utilize these rates negotiated by ESI for pharmacy benefits.  Because all of Prime's clients opted to participate in ESI's networks, when AHF dispenses a drug for a covered Blue Plan member, AHF is now paid the rate that it previously negotiated with ESI to be paid for the drug rather than the rate that it negotiated with Prime to be paid for the drug.  Compl. ¶ 20.  AHF alleges that as a result it is now reimbursed less than it was before.  *Id.* ¶¶ 22, 36.  AHF does not allege that these reimbursement rates it negotiated with ESI pre-collaboration are below any measure of its costs.

AHF admits that Prime has publicly stated that the purpose of the ESI-Prime collaboration is to "*deliver more affordable care for clients and their members*." Compl. ¶ 9 (quoting Compl. Ex. 4 at 25) (emphasis added). This statement is consistent with Prime's mission of low-cost prescription medicine to covered Blue Plan members. It is also consistent with an analysis cited in AHF's Complaint, which predicts: "The Federal Trade Commission (FTC) will probably consider the Express Scripts-Prime deal to be pro-competitive. That's because the FTC will likely determine that the arrangement lowers healthcare costs and will therefore be beneficial to consumers." Compl. Ex. 8 at 43.

## III.   Argument

AHF's claims must be dismissed. AHF does not allege antitrust injury and cannot proceed. AHF attempts to rely only on a per se theory of violation, but does not allege any conduct that meets the narrow exception where the per se theory applies. Because AHF does not allege a viable antitrust claim, its parallel UCL claim must also be dismissed. Further, AHF's claims are time-barred by contractual agreement and, in any event, if the Court declines to dismiss AHF's claims entirely, they should be sent to arbitration.

### A.   AHF Cannot Bring Its Antitrust Claims Because It Has Not and Cannot Plead Antitrust Injury

In order to bring a claim under the Sherman or Cartwright Act, a plaintiff must allege antitrust injury. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (Sherman Act); *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 548 (1998) (Cartwright Act). This is true even if a plaintiff alleges a per se violation. *Atl. Richfield Co.*, 495 U.S. at 341-45 (Sherman Act); *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 449 (N.D. Cal. 2017) (Cartwright Act).

Antitrust injury is distinct from injury in fact because antitrust injury must "reflect the anticompetitive effect either of the violation or of anticompetitive acts

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

made possible by the violation." *Brunswick*, 429 U.S. at 489. The "antitrust injury requirement often enables antitrust courts to dispose of more claims at an early stage of litigation by simply examining the logic of the plaintiff's theory of injury." PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW: AN ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR APPLICATION ¶ 337 (5th ed., 2021 Cum. Supp. 2013-2020). The Ninth Circuit routinely affirms motions to dismiss Sherman Act claims based on a plaintiff's failure to plausibly allege the antitrust injury elements. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013); *Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, 642 F. App'x 665, 666-67 (9th Cir. 2016); *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380, 381 (9th Cir. 2018). Courts also routinely dismiss Cartwright Act claims based on a plaintiff's failure to plausibly allege antitrust injury. *See, e.g.*, *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 500 (Cal. Ct. App. 2011); *California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, No. SA-CV-09242-DOC-ANX, 2010 WL 11519328, at *8 (C.D. Cal. Dec. 1, 2010).

To survive a motion to dismiss under the Sherman or Cartwright Act, a plaintiff must allege four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999) (Sherman Act); *see also Morrison*, 66 Cal. App. 4th at 548 (antitrust injury under the Cartwright Act requires a showing of "[2] injury [4] the antitrust laws were intended to prevent, and [3] which flows from the invidious conduct which renders [1] defendants' acts unlawful"). AHF fails to allege any facts establishing the first, third, or fourth element. Its Sherman and Cartwright Act claims must be dismissed.

### 1.    AHF Does Not Allege Any Unlawful Conduct

AHF labels the Prime-ESI collaboration "[h]orizontal price-fixing," Compl. ¶ 29, but the label does not make it so. *See, e.g.*, *Kendall v. Visa U.S.A., Inc.*, 518

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-5-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

F.3d 1042, 1047-48 (9th Cir. 2008) (affirming dismissal of Sherman Act § 1 claim without leave to amend because "appellants pleaded only ultimate facts, such as conspiracy, and legal conclusions"). AHF's price-fixing allegation is missing a fundamental element – an agreement to fix prices. AHF does not allege that Prime and ESI jointly agreed upon any prices, let alone that they agreed together to fix a uniform amount they were willing to pay pharmacies as reimbursement. Instead, AHF alleges that the ESI-Prime collaboration provides an option for clients to participate in ESI's pharmacy network, which separately and independently negotiated its own upstream pricing with pharmaceutical manufacturers and negotiated and set its own reimbursement rates with pharmacies. Clients can still choose either the rates that Prime negotiated, or rates that ESI alone negotiated. ESI and Prime did not agree to fix any of these prices, they simply agreed to make ESI's (typically lower) rates available to Prime's clients and there are no evidentiary facts pled in the Complaint (beyond mere conclusions and labels) that suggest otherwise.

In *Gerlinger v. Amazon.com, Inc.*, plaintiff book buyers challenged an agreement wherein Amazon operated Borders' online bookshop. 311 F. Supp. 2d 838, 842 (N.D. Cal. 2004). The agreement provided that Amazon would set the prices for books sold on Borders' website, but that the website would continue to be owned by Borders. *Id.* The district court "reject[ed] plaintiff's suggestion that because the provision of the Agreement may have an effect on prices, that it is automatically a *per se* illegal 'price-fixing agreement.'" *Id.* at 846. It noted that under the agreement "Amazon could sell a book at a lower price on the Borders.com website than the price it would list the same book for on its own Amazon.com site," explaining that "[a]lthough there would be no apparent business reason for doing so, this is still a relevant consideration in determining whether the provision 'fixes' prices." *Id.* at 848. Here, too, clients are not required to use ESI's

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

rates but can choose to continue to use Prime's negotiated rates.  Even though all of the clients chose to use ESI rates, they were not obligated to.

Since this is not a price-fixing agreement, AHF fails to allege unlawful conduct under the Sherman Act.  The same is true with respect to AHF's Cartwright Act claim, because "the standard for lawful competitive conduct" with respect to price-fixing "is identical under both state and federal law." *Crown Oil Corp. v. Superior Ct.*, 177 Cal. App. 3d 604, 611 (Cal. Ct. App. 1986) (quoting *Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1274 n.11 (9th Cir. 1982)).

## 2.    AHF Does Not Allege Injury Which Flows From Allegedly Anticompetitive Conduct

AHF also cannot establish the third element of antitrust injury.  If a plaintiff's injury "flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se*." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995).  Before the ESI-Prime collaboration, AHF agreed to accept certain reimbursement rates from ESI.  Compl. ¶ 18.  AHF alleges that as a result of the ESI-Prime collaboration, it now receives those negotiated ESI rates for drugs dispensed to patients who are insured by Prime's member plans. *Id.* ¶ 20; *see also id.* ¶¶ 14, 19.  Even if it were the case (which it is not) that the ESI-Prime collaboration enables ESI and Prime to use their joint market power to impose anticompetitively low reimbursement rates, the rates that AHF agreed to *before* the collaboration could not reflect this anticompetitive conduct. *Atl. Richfield Co.*, 495 U.S. at 334 ("injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anticompetitive aspect of the practice under scrutiny"); *Morrison*, 66 Cal. App. 4th at 548 (affirming a demurrer because "[t]he plaintiff in a Cartwright Act proceeding must show that an antitrust violation was the proximate cause of his injuries").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

The Ninth Circuit affirmed dismissal of antitrust claims brought by actors Paul Newman and George Hill for a similar reason in *Newman v. Universal Pictures*, 813 F.2d 1519 (9th Cir. 1987). In 1972, Newman and Hill entered into contracts with Universal which provided that Universal would pay them a contractually defined percentage of proceeds. *Id.* at 1521. Newman and Hill alleged that in 1981, Universal conspired with other studios to minimize the amounts paid to them and other artists. *Id.* The Ninth Circuit held that plaintiffs had not alleged antitrust injury because their "fundamental problem" was that they "entered into the contracts . . . before the alleged conspiracy arose," meaning that the conspiracy "could not have affected the competition for [their] services at the time the contracts were made." *Id.* at 1522; *see also Orion Pictures Distr. Corp. v. Syufy Enters.*, 829 F.2d 946, 949 (9th Cir. 1987) (no antitrust injury when "alleged monopolization did not affect the competition to license [movie] at the time of bidding for the movie"); *Z Channel Ltd. P'ship v. HBO, Inc.*, 931 F.2d 1338, 1342-43 (9th Cir. 1991) (reversing summary judgment decision based on the district court's finding that "[m]uch or all of the alleged harm . . . arose either from the enforcement of . . . preexisting contract terms, or from the refusal to modify those terms" because the plaintiff was actually "asserting an injury to competition that postdates the anti-competitive activity of which it complains"). Here, too, any alleged anticompetitive conduct could not have affected the negotiation for the reimbursement rates AHF now receives. Therefore, AHF does not allege that any lower rates it receives flow directly from a competition-reducing aspect of Prime's conduct, and it does not allege antitrust injury.

### 3. AHF Does Not Allege That the Prime-ESI Collaboration Injured AHF In A Manner Which the Antitrust Laws Were Designed to Prevent

Finally, AHF must allege that its injury was "the type the antitrust laws were intended to prevent." *Brunswick*, 429 U.S. at 489. AHF alleges that the reimbursement rates it receives after the ESI-Prime collaboration do not provide it

with as large of a profit margin as it used to enjoy.  Compl. ¶¶ 20, 22.  But AHF does not allege any harm to competition more broadly.  Without alleging harm to competition, AHF cannot allege antitrust injury.  *See Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001) (allegation that a "decrease in one competitor's market share" inadequate to allege antitrust injury under the Sherman Act because it "affects competitors, not competition"); *Evac v. Pataki*, 89 F. Supp. 2d 250, 260 (N.D.N.Y. 2000) (granting motion to dismiss for lack of antitrust injury under the Sherman Act where plaintiff did not allege that "Defendants' actions injured market-wide competition as opposed to [plaintiff]'s individual business"); *Marsh*, 200 Cal. App. 4th at 495 ("[i]njury to an individual plaintiff is insufficient to establish standing to assert antitrust violations" under the Cartwright Act); *Song Fi, Inc. v. Google, Inc.*, No. C 14-5080 CW, 2016 WL 1298999, at *6 (N.D. Cal. Apr. 4, 2016) ("Plaintiffs have also insufficiently alleged that the alleged conspiracy caused harm to competition."); *FashionPass, Inc. v. Rent the Runway, Inc.*, No. CV 19-3537-GW(JCX), 2019 WL 3782332, at *3 (C.D. Cal. June 24, 2019) (dismissing Cartwright Act claim for lack of antitrust injury because "the Court finds no allegations of harm to the *market*, or competition generally, in the complaint").  Therefore, AHF's antitrust claims must be dismissed.

**B.     AHF's Antitrust Claims Fail to Allege a Per Se Violation**

AHF labels the Prime-ESI collaboration "[h]orizontal price-fixing," which, it claims, is "a per se unreasonable restraint of trade under the federal Sherman Act." Compl. ¶ 29.  AHF seeks to avoid the presumptive rule of reason analysis with its "[h]orizontal price-fixing" label.  But AHF has it backwards.  The label "price fixing" is a "shorthand way of describing certain categories of business behavior to which the *per se* rule has been held applicable," not vice-versa.  *Broad. Music, Inc.* [*BMI*] *v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 9 (1979).  Although "agreements among competitors to fix prices on their individual goods or services" are prohibited per se, "easy labels do not always supply ready answers."  *Id.* at 8.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-9-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

Instead, a court must "characterize the challenged conduct as falling within or without that category of behavior to which we apply the label '*per se* price fixing.'" *Id.* at 9.  The analysis is the same for AHF's Cartwright Act claim.  *See Aguilar v. Atl. Richfield Co.*, 92 Cal. Rptr. 2d 351, 393 (Cal. Ct. App.), *aff'd*, 25 Cal. 4th 826, 24 P.3d 493 (Cal. 2001), *as modified* (July 11, 2001) (citing *BMI*, evaluating the "efficiency-enhancing purposes, and pro-competitive effects" of an alleged price fix, and refusing to apply per se analysis to Cartwright Act claim); *see also Marin Cty. Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 931 (Cal. 1976) ("we hesitate before mechanically applying a per se rule" to a Cartwright Act claim).

The Supreme Court recognizes that due to the "inherent limits on a court's ability to master an entire industry—and aware[ness] that there are often hard-to see efficiencies attendant to complex business arrangements," courts evaluating Sherman Act claims "take special care not to deploy" per se analysis "until we have amassed 'considerable experience with the type of restraint at issue' and 'can predict with confidence that it would be invalidated in all or almost all instances.'" *NCAA v. Alston*, 141 S. Ct. 2141, 2156 (2021) (quoting *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886-87 (2007)); *see also United States v. Brown Univ. in Providence in State of R.I.*, 5 F.3d 658, 671 (3d Cir. 1993) ("[T]he Court has been more hesitant to . . . apply a *per se* rejection to competitive restraints imposed in contexts where the economic impact of such practices is neither one with which the Court has dealt previously, nor immediately apparent.").  The same analysis applies to Cartwright Act claims.  *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482–83 (9th Cir. 1986), *opinion modified on denial of reh'g*, 810 F.2d 1517 (9th Cir. 1987) ("[T]he California Supreme Court does not apply a per se approach to arrangements with which it is unfamiliar."); *Reynolds v. California Dental Serv.*, 200 Cal. App. 3d 590, 597 (Cal. Ct. App. 1988) (citing *BMI* and refusing to apply per se treatment to Cartwright Act claim where "neither the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-10-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

1    federal nor California courts have had much exposure to the antitrust implications

2    of prepaid medical plans").

3         Courts only apply per se analysis to arrangements which "obviously threaten

4    to reduce output and raise prices." *Alston*, 141 S. Ct. at 2156; *see also BMI*, 441

5    U.S. at 19-20 (the "inquiry must focus on . . . whether the practice facially appears

6    to be one that would always or almost always tend to restrict competition and

7    decrease output . . . or instead one designed to increase economic efficiency and

8    render markets more, rather than less, competitive") (cleaned up).  For example, in

9    *United States v. Trenton Potteries*, the Supreme Court upheld per se analysis of an

10   agreement among 23 corporations to "fix and maintain uniform prices" for toilets

11   and to limit their sales to a certain set of "legitimate" buyers.  273 U.S. 392, 394

12   (1927); *see also United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 227-28

13   (1940) (applying per se treatment to a conspiracy between competitors to fix the

14   price of gasoline at supracompetitive rates).

15        By contrast, "[w]hen a defendant advances plausible arguments that a

16   practice enhances overall efficiency and makes markets more competitive, per se

17   treatment is inappropriate, and the rule of reason applies." *Paladin Assocs. v. Mont.*

18   *Power Co.*, 328 F.3d 1145, 1151 (9th Cir. 2003) (refusing to apply per se analysis);

19   *see also NSS Labs, Inc. v. Symantec Corp.*, No. 18-CV-05711-BLF, 2019 WL

20   3804679, at *6 (N.D. Cal. Aug. 13, 2019) (dismissing plaintiff's per se claims

21   because defendants' "efficiency justification" was "plausible on its face").

22   "Restraints that are not unreasonable *per se* are judged under the 'rule of reason.'"

23   *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2284 (2018); *see also Leegin*, 551

24   U.S. at 885 ("rule of reason is the accepted standard"); *Texaco Inc. v. Dagher,* 547

25   U.S. 1, 5 (2006) (Supreme Court "presumptively applies rule of reason analysis").

26   "The rule of reason requires courts to conduct a fact-specific assessment of market

27   power and market structure to assess the restraint's actual effect on competition."

28   *American Express*, 138 S. Ct. at 2284 (cleaned up).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

Even if the Prime-ESI collaboration were viewed as an agreement on price (which it is not), it should clearly be evaluated under the rule of reason because Prime advances much more than "plausible" arguments that the collaboration "enhances overall efficiency." *Paladin Assocs.*, 328 F.3d at 1151.  AHF alleges that as a result of the Prime-ESI collaboration, the health plans participating in Prime "transition[ed] to ESI's commercial and Medicaid pharmacy networks." Compl. ¶ 14.  Specifically, AHF alleges that prior to the collaboration, AHF received reimbursements from both Prime and ESI, and after the collaboration, "AHF has been receiving reimbursements from Prime that are at [ESI]'s rates." *Id.* ¶¶ 18, 20.  ESI will also "handl[e] negotiations for drugs on the pharmacy benefit." Compl. Ex. 4 at 25.[4]  Should this case proceed beyond the pleadings, Prime will indeed show that this arrangement reduces costs within the system of delivering pharmaceuticals to patients, including by reducing the duplication of the costs of building and maintaining a pharmacy network.  But even from the pleadings it should be apparent that the Prime-ESI collaboration is not a naked price fixing agreement.  It is a business arrangement intended to lower costs to patients and within the system.  Indeed, an analysis cited in AHF's Complaint predicts that the FTC would "probably consider the Express Scripts-Prime deal to be pro-competitive" because "the FTC will likely determine that the arrangement lowers healthcare costs and will therefore be beneficial to consumers."  Compl. Ex. 8 at 43. There is no reason to believe that it facially "appears to be one that would always or almost always tend to restrict competition ***and*** decrease output."  *BMI*, 441 U.S. at 19-20 (emphasis added).  Instead, this is an arrangement that is "designed to

---

[4] When evaluating this Motion to Dismiss, this Court may consider the exhibits to the Complaint.  *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) ("A court may [] consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

1    increase economic efficiency and render markets more, rather than less,

2    competitive." *Id.* at 20.

3        Another reason that the Prime-ESI collaboration should be evaluated under

4    the rule of reason is that it shares features with joint purchasing arrangements.  In

5    joint purchasing arrangements, competitors join to make purchases to "achieve

6    economies of scale in purchasing." *Nw. Wholesale Stationers, Inc. v. Pac.*

7    *Stationery & Printing Co.*, 472 U.S. 284, 286 (1985).  Like joint purchasing

8    arrangements, the Prime-ESI collaboration reduces costs by "integrat[ing]

9    transactional efficiencies, such as negotiating and transacting" with suppliers.

10   *Castro v. Sanofi Pasteur Inc.*, No. CV 11-7178 (JLL), 2012 WL 12516573, at *6

11   (D.N.J. Dec. 20, 2012).  While Prime disputes that any economies of scale in

12   purchasing affected AHF's reimbursements, *see* Section II.A.2, this is the crux of

13   AHF's allegation.  Antitrust claims challenging joint purchasing arrangements are

14   evaluated under the rule of reason.  *Nw. Wholesale Stationers*, 472 U.S. at 295-97.

15   This is because joint purchasing arrangements are "a conventional means of

16   reducing costs to participating members," and do not indicate "anticompetitive

17   motives." *Langston Corp. v. Standard Reg. Co.*, 553 F. Supp. 632, 639 (N.D. Ga.

18   1982); *see also W. Parcel Express v. UPS of Am.*, 190 F.3d 974, 976 (9th Cir. 1999)

19   (holding that "volume discount contracts are legal under antitrust law" and noting

20   that in *Fedway Assocs., Inc. v. United States Treasury, Bureau of Alcohol, Tobacco*

21   *& Firearms*, 976 F.2d 1416 (D.C. Cir. 1992), the DC Circuit held that "volume

22   discount contracts provide pro-competitive value").

23       One additional reason to evaluate AHF's claims under the rule of reason is

24   that the California Legislature recognizes "the public interest in ensuring that

25   citizens of this state receive high-quality health care coverage in the most efficient

26   and cost-effective manner possible," and to that end, the Legislature has declared

27   "that the formation [of]. . . purchasing groups for the purpose of creating efficient-

28   sized contracting units be recognized as the creation of a new product within the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-13-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

health care marketplace, and be subject, therefore, only to those antitrust prohibitions applicable to the conduct of other presumptively legitimate enterprises." Cal. Bus. & Prof. Code § 16770(f)-(g). Indeed, AHF alleges that the Prime-ESI collaboration creates a more efficient-sized contracting unit and does not dispute that the collaboration provides California citizens with more cost-effective health care. One California court applied § 16770 to hold that an allegation of price-fixing under the Cartwright Act against an organization of competing dentists would be judged under the rule of reason. *Reynolds v. California Dental Serv.*, 200 Cal. App. 3d 590, 599–600 (Cal. Ct. App. 1988). Section 16770 also lends support to evaluating AHF's Sherman Act claim under the rule of reason – courts cannot "predict with confidence that" a collaboration of this type "would be invalidated in all or almost all instances,'" *Alston*, 141 S. Ct. at 2156, when the California Legislature has specifically found the arrangement to be in the public interest.

### C. AHF's Antitrust Claims Fail to Allege Sufficient Facts to State a Rule of Reason Violation

If this Court determines that AHF alleges antitrust injury and that its antitrust claims must be evaluated under the rule of reason, it must dismiss those claims. Because AHF's Complaint proceeds under a per se theory only, AHF cannot subsequently rely upon the rule of reason. "Plaintiffs must abide by the consequences of [their] pleading decision and cannot, at its convenience, switch to a theory not plead in the Complaint." *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 994 (N.D. Cal. 2015) (declining to allow plaintiffs to argue per se liability in their motion to dismiss because "[p]laintiffs' Complaint expressly states that 'Defendants' arrangements are unlawful under the antitrust laws when assessed under the Rule of Reason'"); *see also Jain Irrigation, Inc. v. Netafim Irrigation, Inc.*, 386 F. Supp. 3d 1308, 1316 (E.D. Cal. 2019) (dismissing the alleged conspiracy after determining it was properly analyzed under the rule of reason, respecting plaintiff's decision to rely exclusively on per se liability).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-14-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

1    Moreover, AHF does not plead facts it needs to state a Sherman Act Section
2    1 claim under the rule of reason which include: "(1) a contract, combination or
3    conspiracy among two or more persons or distinct business entities; (2) by which
4    the persons or entities intended to harm or restrain trade or commerce among the
5    several States, or with foreign nations; (3) which actually injures
6    competition." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir.
7    2012).

8    Section III.A.1 explains that AHF failed to plead facts establishing the
9    existence of an anticompetitive agreement between Prime and ESI, meaning that
10   AHF fails to plead (1) and (2). This is because in order to establish the requisite
11   intent for a Section 1 claim under a rule of reason analysis, a plaintiff must plead
12   facts that plausibly allege the existence of an illegal agreement to harm or restrain
13   trade—a court cannot "infer an anticompetitive agreement when factual allegations
14   just as easily suggest rational, legal business behavior." *name.space, Inc. v.*
15   *Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1130 (9th Cir. 2015)
16   (cleaned up).

17   In order to plead element (3), AHF "must, at a minimum, sketch the outline
18   of the antitrust violation with allegations of supporting factual detail." *Les Shockley*
19   *Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507–08 (9th Cir. 1989). This
20   factual support must include either "the relevant geographic and product markets
21   and demonstration of the restraint's anticompetitive effects within those markets"
22   or "proof of actual detrimental competitive effects such as output decreases or price
23   increases." *Id.* at 508; *see also American Express*, 138 S. Ct. at 2285 ("courts
24   usually cannot properly apply the rule of reason without an accurate definition of
25   the relevant market"); *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir.
26   2001) ("Failure to identify a relevant market is a proper ground for dismissing a
27   Sherman Act claim."). AHF does not allege any of the above, and its claim under
28   Section 1 of the Sherman Act must be dismissed. AHF's Cartwright Act claim

CROWELL
& MORING LLP
ATTORNEYS AT LAW
                                    -15-
DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

"fails for the same reasons" – "the requirements to plead a claim under California's Cartwright Act are patterned after section 1 of the Sherman Act." *Kelsey K. v. NFL Enters., LLC,* 757 F. App'x 524, 527 (9th Cir. 2018) (cleaned up).

**D.    UCL Claim Must Be Dismissed**

AHF fails to allege a viable unfair competition claim.  Conduct that violates California's Unfair Competition statute includes any business act or practice which is either: 1) unlawful; 2) unfair; or 3) fraudulent.  Bus. & Prof. Code, § 17200. AHF alleges that the Prime-ESI collaboration is either unlawful because it is in violation of California and federal antitrust laws, or that it is unfair.  Compl. ¶ 40.

AHF's failure to allege a viable Sherman or Cartwright Act claim is fatal to its attempt to state UCL claim under the unlawful prong.  AHF's UCL claim is predicated on violations of California or federal antitrust laws, which fail as explained above in Sections III.A-C.  *See Orchard Supply Hardware ("OSH") LLC v. Home Depot USA, Inc*., 939 F. Supp. 2d 1002, 1011 (N.D. Cal. 2013) (determining activity was not unlawful under UCL because plaintiff failed to plead a viable Sherman or Cartwright Act claim); *see also Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (UCL "borrows [and proscribes] violations of other laws," and "does not itself proscribe specific conduct").

AHF's failure to plead a viable Sherman or Cartwright Act claim is also fatal to its claim that the Prime-ESI collaboration was "unfair" under the UCL.  In *OSH*, after dismissing plaintiff's Sherman and Cartwright Act claims, the court dismissed plaintiff's claim that the conduct alleged was "unfair" under the UCL because "acts permissible under antitrust laws cannot be deemed unfair under the unfair competition law, at least not where a plaintiff alleges that the acts are unfair for the same reason it argues that they violate antitrust law."  939 F. Supp. 2d at 1011 (citation and internal quotations omitted); *see also Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) (dismissing Cartwright Act and "unfair" UCL claims and noting that "the determination that the conduct is not an unreasonable restraint

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-16-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

of trade necessarily implies that the conduct is not 'unfair' toward consumers"). Similarly, here, AHF provides no additional factual allegations for its claim that the Prime-ESI collaboration is "unfair" beyond that it allegedly violated the Sherman and Cartwright Acts. Compl. ¶ 40. Therefore, because AHF's Sherman and Cartwright Acts must be dismissed, its UCL "unfair" claim must also be dismissed.

### E.   AHF's Claim Violates The Parties' Contract for A One-Year Limitation on Actions

When it signed the PPA, AHF agreed that "any action" brought:

> in relation to an alleged breach of this Agreement will be commenced within one (1) year of the date of the breach, without regard to the date the breach is discovered. Any action or arbitration not brought within that one year time period will be barred, without regard to any other limitations period set forth by law or statute.

RJN, Ex. 1 § 9.10.3. The PPA also provides that it "will be construed in accordance with the laws of the state of Minnesota, except when federal law applies." *Id.* § 9.9. Under Minnesota law, the "[p]arties may limit the time within which legal claims may be brought [including through arbitration] provided there is no statute specifically prohibiting the use of a different limitations period in such a case and the time fixed is not unreasonable." *Peggy Rose Revocable Trust v. Eppich*, 640 N.W. 2d 601, 606-07 (Minn. 2002). No statute prohibits this reasonable limitation period.

All of AHF's claims are based on injuries that occurred more than one year in advance of filing its Complaint. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) ("Generally, [an antitrust cause] of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business. . . ."); *see also Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 879-80 (N.D. Cal. 2015) (holding that plaintiff's claims began to accrue when defendants

1   entered into the agreement to suppress wages); *Garrison v. Oracle Corp.*, 159 F.

2   Supp. 3d 1044, 1062-63 (N.D. Cal. 2016) (same).  AHF admits that the Prime-ESI

3   collaboration was announced on December 19, 2019, that Prime sent out a mass

4   mailing announcing transition on January 2, 2020, and that AHF has been receiving

5   reimbursements from Prime at ESI's rates "since April 2020."  Compl. ¶¶ 9, 14, 20;

6   *see also id.* ¶ 19 (Prime released a "crosswalk table informing pharmacies"

7   regarding rates under the Prime-ESI collaboration in or around April 2020).

8   Therefore, the Complaint must also be dismissed on this basis.

9         **F.    AHF Should Be Compelled To Arbitrate If Its Claims Are Not Dismissed**

10

11         To the extent the Court declines to dismiss the Complaint at the pleading

12   stage, AHF should be compelled to arbitrate its disputes.  *In re Animation Workers*

13   *Antitrust Litig.*, 87 F. Supp. 3d 1195, 1206, 1218 (N.D. Cal. 2015) (granting

14   defendants' motion to dismiss when defendants simultaneously brought motions to

15   dismiss and compel arbitration); *see also Galvez v. Anheuser-Busch, Ltd. Liab. Co.*,

16   No. 2-17-00621 WBS DB, 2017 U.S. Dist. LEXIS 152382, at *3 (E.D. Cal. Sep.

17   19, 2017) (declining to "reach defendant's alternative motions to compel arbitration

18   or to stay these proceedings" after granting the defendant's motion to dismiss).

19         When it signed the PPA, AHF agreed to arbitrate "all disputes between the

20   parties that arise out of th[e] Agreement, including those based on federal and state

21   law," and to submit disputes "to binding arbitration in accordance with the rules

22   and procedures of the American Arbitration Association."  RJN, Ex. 1 § 9.10.2.

23   AHF's claims in this lawsuit arise out of and relate to the PPA, which "sets forth

24   the terms and conditions under which [AHF] will provide benefits in Prime's

25   pharmacy networks." RJN, Ex. 1 at 1.  They are thus directly within the scope of

26   the arbitration clause.  *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.

27   1999) ("To require arbitration, [plaintiff]'s factual allegations need only 'touch

28   matters' covered by the contract containing the arbitration clause and all doubts are

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-18-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR

to be resolved in favor of arbitrability."); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985) ("arising out of or relating to" is a "broad clause" applicable to antitrust claims).  For example, in *Nokia Corp. v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.*, the court compelled arbitration of antitrust claims based on language covering disputes "related to" the agreement because "[a]ll of the purchases at issue in this case were made under the [agreement]" and the "antitrust claims therefore 'touch matters' addressed by the agreement."  No. C 09-05609 SI, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011); *see also Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103 (C.D. Cal. 2002).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In the alternative, this Court should allow the arbitrator to decide arbitrability.  "[W]here," as here, RJN, Ex. 1 § 9.10.2, "the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules—such as the AAA Rules—that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided by the arbitrator."  *Bank of America, N.A. v. Micheletti Family Partnership,* No. 08–02902(JSW), 2008 WL 4571245, at *6 (N.D. Cal. Oct. 14, 2008); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 528 (2019) (treating contract incorporating AAA's rules as providing for arbitrator to decide arbitrability).  If the court finds that the parties to the agreement intended to delegate the power to decide arbitrability to an arbitrator, then the court "possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."  *Henry Schein, Inc.*, 139 S. Ct. at 529.

Therefore, if this Court declines to dismiss the complaint on grounds outlined in Sections III.A-E, Prime respectfully requests that AHF be compelled to 1)

arbitrate its dispute pursuant to the PPA's terms; or 2) have an arbitrator decide this question of arbitrability.

## IV.    Conclusion

For the reasons explained above, Defendant Prime seeks an order pursuant to Rule 12(b)(6) dismissing with prejudice the Complaint, or in the alternative, to compel arbitration of Plaintiff's claims.


Dated:  August 13, 2021                                  CROWELL & MORING LLP


By:*/s/ Jason C. Murray*
Jason C. Murray
Shira Rebecca Liu
David Charles Griffith

Attorneys for Defendant
Prime Therapeutics LLC

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-20-

DEFENDANT PRIME THERAPEUTICS LLC'S
MOTION TO DISMISS;
CASE NO. 2:21-CV-04979-DSF-AGR